Filed 8/27/14  In re Daniel M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re DANIEL M., JR., a Person Coming Under the Juvenile Court Law. | D065531 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. DANIEL M., SR., et al., Defendants and Appellants. | (Super. Ct. No. J518556) |

APPEALS from an order of the Superior Court of San Diego County, Kimberlee A. Lagotta, Judge.  Affirmed.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant Daniel M., Sr.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant Danielle M.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Daniel M., Sr., and Danielle M. appeal a juvenile court order denying Danielle's request for a continuance of the Welfare and Institutions Code, section 366.26[1] hearing in the dependency proceeding for their son, Daniel M., Jr.[2]  The parents contend the hearing should have been postponed until the evaluation of the prospective adoptive home of their son was completed.  We affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

One-month-old Daniel was taken into protective custody by the San Diego County Health and Human Services Agency (Agency) after Daniel M. told workers at his methadone clinic he would hurt the infant if he did not get help caring for him.  Daniel tested positive for methadone at birth and at one month old was still being weaned off the drug.  Just a week before Daniel was taken into custody, Danielle was incarcerated on charges of grand theft and burglary and faced extradition to New York for crimes committed there.  Both parents had a history of substance abuse.  Once in custody, a social worker found a large bruise on Daniel's left leg.  Daniel was examined by a physician who concluded the bruise resulted from physical abuse.

Upon Daniel's detention by the Agency, Danielle reported she was a registered member of the Tuscarora Tribe in New York.  At the detention hearing, the court found

---

[1]     Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Daniel M., Jr., is referred to as Daniel, while his father is referred to as Daniel M.

the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) applied. The Agency gave notice to the Tuscarora Tribe of the proceedings. Shortly thereafter, Daniel M. moved to New York to be close to his family. Danielle was also extradited to New York and sentenced to prison until January 30, 2017. At the contested jurisdiction and disposition hearing, the juvenile court declared Daniel a dependent of the court, removed him from his parents care, placed him in a licensed foster home and ordered reunification services for both parents.

By this time, one of Danielle's relatives, a member of the Tuscarora Tribe, came forward and expressed a willingness to care for Daniel. The Agency requested an evaluation of the relative under the Interstate Compact on the Placement of Children (ICPC) (Fam. Code, § 7901 et seq.). Before the six-month review hearing, however, the Agency expressed concern that the relative was no longer interested in caring for Daniel and was working with Tuscarora representatives to find other placement options. By the six-month review hearing, the Agency had disqualified the relative for failing to participate in the process. The tribe identified three other potential families to care for Daniel, including Danielle's cousin, and the Agency began the ICPC evaluation process for the cousin.

The Agency's report for the six-month hearing recommended terminating services for the parents and setting a section 366.26 hearing. The Agency noted that while Daniel M. expressed a desire to regain custody of his son, he did not engage in any of the services required by his case plan, failed to visit Daniel (despite the Agency purchasing him an airline ticket to come to San Diego) and showed no insight into the substance

3

abuse and mental illness that brought Daniel into the dependency system. The juvenile court followed the Agency's recommendation and, at the conclusion of the review hearing, terminated services for the parents and set the permanency planning hearing. After the six-month review hearing, Danielle's cousin decided she was no longer interested in adoption. The tribe's clan mother put the Agency in contact with another family that was interested in adoption and the Agency initiated the ICPC process for this family.

In advance of the section 366.26 hearing, the Agency filed its report recommending termination of parental rights so Daniel could be placed for adoption. At that time, the family recommended by the clan mother was still undergoing the ICPC evaluation. At the start of the contested hearing, Danielle's counsel requested a continuance until Daniel, who remained in the custody of a non-Native American San Diego foster family, was placed with a Native American family. Daniel M.'s counsel joined in the request. Counsel for both the Agency and Daniel opposed the request on the grounds the parents had not shown good cause and that delaying the hearing was not in Daniel's best interests. The juvenile court denied the request.

During trial, the tribe's clan mother appeared telephonically. She stated the tribe agreed with the permanent plan of adoption for Daniel and that the tribal family undergoing the ICPC evaluation should be considered Daniel's adoptive parents. There was no indication at the hearing that the family would not be approved for Daniel's placement. After consideration of the evidence and counsels' arguments, the juvenile court found Daniel was specifically and generally adoptable. The court rejected

4

Danielle's argument that severing her parental bond with Daniel was not in his best interests. The court also found that none of the other circumstances set forth in section 366.26, subdivision (c)(1) that would make termination of parental rights detrimental to Daniel existed and terminated parental rights.

DISCUSSION

Daniel M. argues the juvenile court erred by denying Danielle's request to continue the permanency planning hearing until after the prospective tribal adoptive family had completed the ICPC evaluation process. Danielle joins in this argument. The parents assert good cause for a continuance existed because termination of their rights before the prospective adoptive family was assessed left Daniel with two less advocates for his placement within the tribe. They contend that because the ICPC evaluation had to be complete before Daniel's permanent plan of adoption could be implemented, continuing the section 366.26 hearing would not cause delay. Therefore, continuing the hearing was not contrary to Daniel's best interests.

Under section 352, the juvenile court may grant a continuance of any hearing only on a showing of good cause and only if the continuance is not contrary to a minor's best interests. In considering the minor's interests, "the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a); *In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810.) Because "time is of the essence" for dependent children, continuances in juvenile cases are discouraged. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 674; *Jeff M. v. Superior Court*

5

(1997) 56 Cal.App.4th 1238, 1242.)  We reverse an order denying a continuance only on a showing of an abuse of discretion.  (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605; *In re Elijah V.* (2005) 127 Cal.App.4th 576, 585.)

We do not find the juvenile court's denial of a continuance constituted an abuse of discretion.  The court's conclusion that Danielle did not establish good cause was reasonable.  As the Agency points out, the results of the ICPC evaluation were not relevant to the court's decision on whether or not to terminate parental rights.  Even if the prospective tribal adoptive family is not approved to adopt Daniel, the juvenile court must still follow the statutory placement preferences set forth by ICWA.  (25 U.S.C. § 1915(a) ["In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with (1) a member of the child's extended family; (2) other members of the Indian child's tribe; or (3) other Indian families."]; see also § 361.31.)  In addition, delaying the proceeding could be detrimental to Daniel.  A petition for adoption may not be granted until the appellate rights of the natural parents are exhausted.  (§ 366.26, subd. (j).)  Continuing the termination of parental rights would extend the time to appeal the ruling and, therefore, could result in a delay of Daniel's adoption.  If the prospective tribal adoptive family is approved, Daniel will be freed for adoption sooner.

DISPOSITION

The order is affirmed.

                                                                    BENKE, Acting P. J.

WE CONCUR:


McDONALD, J.


McINTYRE, J.

7